**COMMONWEALTH of Pennsylvania, Appellant**

v.

**George William YOHE, II, Appellee.**

Superior Court of Pennsylvania.

Submitted Nov. 21, 2011.

Filed Feb. 16, 2012.

Duane Ramseur, Assistant District Attorney and James E. Zamkotowicz, Assistant District Attorney, York, for Commonwealth, appellee.

Shawn M. Dorward, Harrisburg, for appellee.

BEFORE: PANELLA, MUNDY, AND FITZGERALD,* JJ.

OPINION BY MUNDY, J.:

The Commonwealth appeals from the order entered January 13, 2011 granting the post-sentence motion filed by Appellee, George William Yohe, II, and awarding him a new trial. Because we conclude the trial court erred in determining Appellee was entitled to a new trial on the basis his constitutional right of confrontation was violated, we reverse.

On August 19, 2009, Officer Scott George of the Northeast Regional Police Department performed a traffic stop of Appellee's vehicle for equipment violations. Upon observation of Appellee, Officer George suspected he had been driving under the influence of alcohol (DUI) and performed field sobriety tests. Appellee was then arrested and transported to Memorial Hospital where a phlebotomist drew a blood sample for chemical analysis. Officer George filed a criminal complaint charging Appellee with two counts of DUI under 75 Pa.C.S.A. § 3802(a)(1) and(b).[1]

---

* Former Justice specially assigned to the Superior Court.

1. We note that 75 Pa.C.S.A. § 3802(a)(1) and (b) provides as follows.
    **(a) General impairment.—**

The case proceeded to a bench trial on August 30, 2010. At trial, the Commonwealth presented the testimony of Officer George and Dr. Lee Blum, a toxicologist and assistant laboratory director at National Medical Services (NMS Labs) where Appellee's blood sample was analyzed. Appellee objected to Dr. Blum's testimony regarding the report of the analysis of Appellee's blood alcohol level and later to the admission of that toxicology report on the grounds it violated his right to confrontation guaranteed under the 6th amendment of the U.S. Constitution. N.T., 8/30/10, at 47, 62. The trial court overruled Appellee's objections. *Id.* at 49, 62. At the conclusion of the trial, the trial court found Appellee guilty of DUI under 75 Pa.C.S.A. § 3802(b) and not guilty of DUI under 75 Pa.C.S.A. § 3802(a)(1). *Id.* at 96.

■ On October 25, 2010, the trial court sentenced Appellee to a term of incarceration of 48 hours to six months and a fine of $500.00. Certified Record (C.R.) at 18, 19. On the same day, Appellee filed a post-sentence motion reasserting his objection to the admission of Dr. Blum's testimony and the toxicology report on constitutional right-of-confrontation grounds. C.R. at

20. On January 13, 2011, the trial court entered an order, together with an opinion in support, granting Appellee's post-trial motion and awarding a new trial. C.R. at 25. On January 26, 2011, the Commonwealth filed a motion for reconsideration. C.R. at 26. On January 28, 2011, Appellee filed a motion for reconsideration requesting the judgment of sentence be vacated rather than a new trial ordered. The trial court did not act on the motions for reconsideration. *Id.* On February 11, 2011, the Commonwealth filed a notice of appeal.[2] C.R. at 27. On February 18, 2011, the trial court directed the Commonwealth to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). C.R. at 28. The Commonwealth timely complied on March 9, 2011. C.R. at 30. On May 6, 2011, the trial court filed an opinion in support of its January 13, 2011 order, which both incorporated by reference and amplified its January 13, 2011 opinion, pursuant to Pa.R.A.P. 1925(a). C.R. at 33.

On appeal, the Commonwealth raises one general question with four sub-issues for our review.

I. Did the trial erred [sic] in granting [Appellee's] post[-]sentence motion

---

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

. . .

(b) **High rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physi-

cal control of the movement of the vehicle.

75 Pa.C.S.A. § 3802(a)(1), (b).

**2.** The Commonwealth claims the trial court committed an error of law in granting a new trial on the ground that the forensic blood-alcohol report was admitted in violation of Appellee's right of confrontation. Accordingly, this is an interlocutory appeal as of right pursuant to Pa.R.A.P. 311(a)(6). This Court has jurisdiction to decide such interlocutory appeals. *Commonwealth v. Dorm*, 971 A.2d 1284, 1285 (Pa.Super.2009) (citation omitted). Additionally, the Commonwealth has certified that the trial court's order terminates or substantially handicaps further prosecution of this case. *See* Notice of Appeal, C.R. at 27; *see also* Pa.R.A.P. 311(d).

when the trial court ruled that [Appellee's] blood test and blood alcohol content were imporperly [sic] admitted at trial because an analyst who performed the tests did not testify?

A. Did [t]he [t]rial [c]ourt err in holding that the Commonwealth did not call an analyst to testify when the Commonwealth called a forensic toxicologist to render an expert opinion concerning the conclusions produced by him, which included [Appellee's] blood alcohol content, thereby qualifying as an analyst[?]

B. Did [t]he [t]rial [c]ourt err in finding that *Melendez–Diaz v. Massachusetts* and *Commonwealth v. Barton–Martin* required the Commonwealth to call witnesses other than the forensic toxicologist to testify regarding opinions and/or conclusions as a result of the blood analysis, which included [Appellee's] blood alcohol content[?]

[C]. Did [t]he [t]rial [c]ourt err in finding the forensic toxicologist's testimony regarding his opinion and/or conclusions as a result of the blood analysis, which included [Appellee's] blood alcohol content, inadmissible when the evidence was properly admitted pursuant to Pa. R.E. 702 and 703; in so ruling that [Appellee's] blood results inadmissible, the [t]rial court de facto held that Rules 702 and 703 violate the Confrontation Clause[?]

[D]. Did [t]he [t]rial [c]ourt err in holding the blood results inadmissible when the Commonwealth properly established the methodology and reliability of the testing procedures used by NMS Labs pursu-

ant to the testimony of the forensic toxicologist, who also testified regarding his opinion and/or conclusions as a result of the blood analysis, including [Appellee's] blood alcohol content, and the Pennsylvania Bulletin, which is proper under the Confrontation Clause[?]

Commonwealth's Brief at 4–5.

■ The Commonwealth's first two sub-issues are interrelated so we shall address them together. At the heart of the Commonwealth's position is its contention that Dr. Blum was an appropriate witness to satisfy Appellee's right of confrontation under the Sixth Amendment to the United States Constitution and that the trial court erred as a matter of law in determining otherwise. Commonwealth's Brief at 10. "Whether Appellant was denied [his] right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Dyarman*, 33 A.3d 104, 106 (Pa.Super.2011), *citing Commonwealth v. Atkinson*, 987 A.2d 743, 745 (Pa.Super.2009).

■ The Confrontation Clause in the Sixth Amendment to the United States Constitution applies to both federal and state[3] prosecutions and provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. IV. The Pennsylvania Constitution likewise provides that, "[i]n all criminal prosecutions the accused hath a right ... to meet the witnesses face to

---

3. The Confrontation Clause applies to the states through application of the Fourteenth Amendment to the United States Constitution.

*Pointer v. Texas*, 380 U.S. 400, 403–406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

face." Pa. Const. art. I, § 9.[4]

To be sure, the Confrontation Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands not that evidence be reliable but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination. Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation.

*Commonwealth v. Holton,* 906 A.2d 1246, 1252–1253 (Pa.Super.2006) (citation omitted), *appeal denied,* 591 Pa. 697, 918 A.2d 743 (2007).

In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment prohibits the use of testimonial hearsay obtained by police officers against a criminal defendant, even if such hearsay is reliable, unless the defendant has the opportunity to cross-examine the unavailable declarant. *Id.* at 54, 124 S.Ct. 1354. Later, in *Melendez–Diaz v. Massachusetts,* 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), the United States Supreme Court addressed the "class of testimonial statements covered by the Confrontation Clause" delineated in *Crawford. Id.* at 2531. Such testimonial statements included "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits [...] that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Id., quoting Crawford, supra* at 52, 124 S.Ct. 1354

In *Melendez–Diaz,* the defendant objected to the admission of certificates of analysis, describing results of forensic testing that determined certain seized substances to be cocaine. *Id.* Melendez–Diaz maintained he had a constitutional right to confront the analysts, who should have been required to testify in person. *Id.* The Supreme Court determined that the certificates of analysis were affidavits made under circumstances leading a reasonable person to believe they would be used at trial. *Id.* at 2532. Accordingly, the affidavits were recognized as testimonial statements and the analysts who prepared the certificates were recognized as witnesses for the purposes of the Sixth Amendment, who the defendant had a right to confront. *Id.* Because that right was not afforded, the certificates were held to be inadmissible. *Id.* In *Melendez–Diaz* the prosecution offered no witnesses in support of the proffered certificates.

We turn now to examine two subsequent cases that address the issue of who is an appropriate witness to testify about a forensic report that qualifies as a testimonial statement under the Confrontation Clause. In *Commonwealth v. Barton–Martin,* 5 A.3d 363 (Pa.Super.2010), *appeal denied,* 30 A.3d 486 (Pa.2011), the defendant objected to the admission of a forensic blood alcohol test result without the testimony of the laboratory technician who performed the test and prepared the lab report. *Id.* at 365. At trial, the Commonwealth presented testimony from a witness who was the laboratory administrative director and

---

**4.** We have held that the Confrontation Clause of the Pennsylvania Constitution affords defendants the same rights as the Sixth Amendment of the United States Constitution. *See Commonwealth v. Geiger,* 944 A.2d 85, 97 n. 6 (Pa.Super.2008). Appellee did not allege state constitutional grounds in support of his post-trial motion. Accordingly, our discussion will be limited to Appellant's confrontation rights under the Confrontation Clause in the Sixth Amendment.

custodian of records for the Hospital where the analysis was performed. *Id.* at 366. The witness testified as to lab procedures but admitted that "she was not the technologist who analyzed [the defendant's] blood." *Id.* The trial court admitted the report as a business record. *Id.* at 368.

On appeal, the *Barton–Martin* Court concluded the blood-alcohol test was "the very type of *ex parte* out-of-court report ruled inadmissible (without the opportunity for confrontation) in *Melendez–Diaz.*" *Id.* Accordingly, this Court held as follows.

[P]ursuant to the Supreme Court's holding in *Melendez–Diaz,* absent a showing that the laboratory technician was unavailable, and the Appellant had a prior opportunity to cross-examine her, the laboratory technician's failure to testify in the Commonwealth's case-in-chief violated Appellant's Sixth Amendment right to confrontation. Because no showing of unavailability and prior cross examination was made, the admission of Appellant's BAC test results in this matter was an error of law.

*Id.* at 369. The *Barton–Martin* Court noted that a mere custodian of records, otherwise unconnected to the performance of the analysis of the blood sample at issue, does not satisfy the confrontation clause. *Id.* at 369 n. 5. It is the "analyst's statements" in the report that constitute the "testimonial statement" triggering the right of confrontation. *Id.* at 368, quoting *Melendez–Diaz, supra* at 2540; *cf. Dyarman, supra* (holding calibration logs, establishing chain of custody and accuracy of equipment, not used to establish an element of a crime or for particular prosecution are not testimonial statements requiring confrontation).

In *Bullcoming v. New Mexico,* — U.S. —, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), the United States Supreme Court addressed a similar scenario to that presented in *Barton–Martin.*[5] In *Bullcoming,* the defendant was charged with driving while intoxicated. *Id.* at 2709. At trial, a forensic laboratory report of the defendant's blood-alcohol level, as analyzed and prepared by the New Mexico Department of Health, Scientific Laboratory Division (SLD), was offered into evidence. *Id.* at 2711–2712. The report was completed, signed and certified by an analyst who was not called to testify. *Id.* Instead, another analyst from SLD testified as to the procedures and equipment used but admitted he had no involvement with the specific sample at issue. *Id.* at 2712. The Supreme Court recognized "[a]n analyst's certification prepared in connection with a criminal investigation or prosecution ... is 'testimonial,' and therefore within the compass of the Confrontation Clause." *Id.* at 2713–2714. The *Bullcoming* Court held as follows.

As a rule, if an out-of-court statement is testimonial in nature, it may not be introduced against the accused at trial unless the witness who made the statement is unavailable and the accused has had a prior opportunity to confront that witness. Because the New Mexico Supreme Court permitted the testimonial statement of one witness ... to enter into evidence through the in-court testimony of a second person ... we reverse that court's judgment.

*Id.* at 2713. Further, the Supreme Court reasoned, "surrogate testimony of the kind [the testifying witness] was equipped to give could not convey what [the certifying analyst] knew or observed about the events his certification concerned, *i.e.,* the particular test and testing process he em-

**5.** *Bullcoming* was decided after the trial court issued its May 6, 2011 opinion.

ployed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part." *Id.* at 2715. "The comparative reliability of an analyst's testimonial report does not dispense with the Clause. The analysts who write reports introduced as evidence must be made available for confrontation even if they have the scientific acumen of Mme. Curie and the veracity of Mother Teresa." *Id.* at 2709. "The ... analyst who must testify is the person who signed the certificate." *Id.* at 2716, *quoting Melendez–Diaz, supra* at 2545 (KENNEDY, J., dissenting).

With this authority in mind, we turn to the circumstances of the instant case. As noted above, Appellee's blood sample was sent to NMS labs for analysis. Dr. Blum testified that in his role as a forensic toxicologist at NMS Labs he performs case assignments, case evaluations, reviews of analytic testing, writing of reports, and court testimony. N.T., 8/30/11, at 39. Specifically regarding Appellee's blood sample, Dr. Blum testified as follows.

Q. And do you recall the name of the patient for the blood that you received?

A. George W. Yohe II.

Q. Now, Doctor, did you actually review anything relative to Mr. Yohe's blood on August 21st of 2009?

A. Not on August 21, 2009, no, sir.

Q. What date specifically would you have undertaken review of anything relative to this case?

A. It was the date the report was signed. I believe it was the end of August, perhaps August 31st. At that time I had in hand the case folder which contains the chain of custody documents and the analytical data for the headspace chromatography and then there's information available for this particular patient in our laboratory information system.

Q. Now, Doctor, if you can describe or explain exactly what you do when you review concerning BAC analysis, what's the process or procedure you go through specifically?

A. Again, I have the case folder in front of me. I look at the report. That would be the final report. Prior to finalizing, I check the demographic information, that the information in the report, the name of the individual, the client, any identifying numbers are, all coincide with that of the documentation. I look at the chains of custody. There is an external chain of custody from the requesting agency. I see that's completed. I see that the internal chain of custody is completed by our staff and that the external chain of custody and the internal chain of custody, the people who sign the external chain of custody are the same people that sign the internal chain of custody. I check the testing that was performed. I review the data that's available. I review that the data coincide one with the other.

In the case of the blood alcohol testing, we do the headspace gas chromatography in duplicate. I see that the two numbers agree. I look and make sure it's a clean enzymatic assay, and see that they agree with the headspace analysis. I make certain that the number that appears on the headspace gas chromatography is the result that will be reported. I look over the report. And if everything seems okay, then I sign it.

N.T., 8/30/11, at 41–42. Dr. Blum went on to testify he performed this review in the instant case and electronically signed the report. *Id.* at 51. He noted that the Lab performed two headspace gas chromatography tests and one enzymatic assay on Appellee's blood sample. *Id.* at 49–50. Dr. Blum explained the purpose for this procedure in the following exchange.

Q. Doctor, what's the purpose of doing more than one type of test of a blood sample?

A. We have concerns certainly that we want to be certain about the results that we report. And the two different analyses allow us—they are based on two different physical chemical properties, so it helps us to identify the presence of ethyl alcohol. It serves as a confirmation not only of the testing procedures but confirmation of the specimen itself because it requires two different people to handle the specimen at two different times to be certain that the sample that we test is correct.

*Id.* at 46–47.

On cross-examination, Dr. Blum acknowledged that he did not personally handle or observe the testing performed.

Q. What you are testifying to is all according to procedure, because you didn't specifically observe them do these things; correct?

A. That's correct.

. . .

Q. At what point in time do you get hands on this specimen?

A. I look at the documentation associated with the specimen.

Q. So you never actually do anything with the specimen?

A. Correct.

Q. So you never saw Mr. Yohe's tube of blood that came to NMS ?

A. Correct.

*Id.* at 57–58.

■ In view of this testimony, Appellee argued, in his motion for new trial, that the blood-alcohol analysis report was a testimonial statement and that Dr. Blum's testimony could not satisfy his right to confrontation relative to that report because Dr. Blum had not personally conducted the testing. *See* C.R. at 20. We are therefore presented with factual circumstances distinct from those presented in *Barton–Martin* and *Bullcoming* and must determine whether the Confrontation Clause is satisfied by the testimony of a witness who certifies blood-alcohol test results and signs the report of those results but did not observe, prepare or conduct the actual testing procedures. The trial court, after reviewing the relevant precedents, formulated the question before it as follows. "The dilemma then becomes whether the Supreme Court literally meant that the analysts who performed the tests must testify as to the results or whether [i]t meant that the results could not be admitted as evidence without some accompanying testimony."[6] Trial Court

**6.** The trial court's observation reflects the tension between the Majority and the Dissent in *Melendez–Diaz* relative to the practical application of its holding. The Majority noted as follows. "[W]e do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case." *Melendez–Diaz*, *supra* at 2532 n. 1. The Dissent questioned the practical scope of the decision of the Majority in part as follows.

It could be argued that the only analyst who must testify is the person who signed the certificate. Under this view, a laborato-

ry could have one employee sign certificates and appear in court, which would spare all the other analysts this burden. But the Court has already rejected this arrangement. The Court made clear in *Davis* [*v. Washington*, 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)] that it will not permit the testimonial statement of one witness to enter into evidence through the in-court testimony of a second:

"[W]e do not think it conceivable that the protections of the Confrontation Clause can readily be evaded by having a note-taking policeman [here, the laboratory employee who signs the certificate] *recite* the unsworn hearsay testimony of the de-

Opinion, 1/13/11, at 4. The trial court ultimately concluded Appellee was correct for the following reasons.

> The witness from whom the testimony found in the lab report derives is the analyst who actually performed the analysis on the [Appellee's] blood sample. As such, it is that analyst, and that analyst alone, who the United States Supreme Court and Pennsylvania Superior Court require to testify at a trial where the report is offered as evidence.
>
> . . .
>
> In this case, [Appellee] was limited in his cross-examination of Dr. Blum in a manner that he would not have been limited in cross-examination of the analyst who performed the test. While credibility of the analyst is certainly an issue, it is not the sole reason for requiring that he or she be subject to confrontation; the manner of testing requires some exercise of judgment, which presents a risk of error that could be addressed on cross-examination.

Trial Court Opinion, 5/6/11, at 3–4. "Therefore, the [trial c]ourt maintains that, despite Dr. Blum's testimony regarding the reliability of the testing procedures employed by the laboratory, [Appellee] is still entitled to confront the witness against him, namely the analyst who performed the blood test." *Id.* at 6. Accordingly, the trial court held "that the evidence of the lab report and test results that were offered at trial were improperly admitted. The improper admission violated [Appellee's] rights under the Confrontation Clause of the United States Constitution and, as such, is grounds for a new trial." *Id.* at 4–5.

The Commonwealth argues the trial court erred in so holding.

> The testimony of the lab technicians, as argued necessary by [Appellee] in his post[-]sentence motion and relied upon by the [t]rial [c]ourt in its order granting [Appellee's] post[-]sentence motion, go towards the weight of the evidence and is not a Confrontation Clause issue under the Sixth Amendment to the United States Constitution. Dr. Blum was the 'analyst' or the person who reviewed the raw data from the machines and generated an expert report based on his review of the raw data that was generated. Therefore, Dr. Blum is the witness that [Appellee] had a right to confront.

Commonwealth's Brief at 10. We agree.

Instantly, it is clear that Dr. Blum did not handle Appellee's blood sample, prepare portions for testing, place the prepared portions in the testing machines, or retrieve the portions after testing. N.T., 8/30/11, at 57–58. However, it is equally clear that Dr. Blum did review the entire file, compare the results of the three independent test printouts on the three aliquots [7], certify the accuracy of the results, and sign the report. *Id.* at 41–42, 51. Accordingly, Dr. Blum is the analyst who prepared the certificate in anticipation for use at Appellee's trial. We concede that Dr. Blum is in a similar position as the testifying witnesses in *Barton–Martin* and

---

clarant [here, the analyst who performs the actual test], instead of having the declarant sign a deposition. Indeed, if there is one point for which no case-English or early American, state or federal-can be cited, that is it." 547 U.S., at 826 [126 S.Ct. 2266].

Under this logic, the Court's holding cannot be cabined to the person who signs the certificates. If the signatory is restating the testimonial statements of the true analysts-whoever they might be-then those analysts, too, must testify in person.

*Id.* at 2525–2546 (KENNEDY, J., dissenting).

7. An aliquot is an extracted portion of the original sample upon which the testing is performed.

*Bullcoming* in that he did not personally handle the defendant's blood sample, prepare the aliquots, or physically place the aliquots in the testing apparatuses. However, unlike the testifying witnesses in *Barton–Martin* and *Bullcoming,* Dr. Blum did certify the results of the testing and author the report sought to be admitted as evidence against Appellee. We conclude this distinction is dispositive of the issue presented.

As declared in *Bullcoming,* it is the certification and the written report that constitute the "testimonial statement" triggering the Sixth Amendment right of confrontation. *Bullcoming, supra* at 2713–2715. Appellee is not limited in his cross-examination of Dr. Blum as suggested by the trial court simply because there may be questions he cannot answer due to the fact he did not perform a specific task in the course of processing Appellee's blood sample. What is relevant to Appellee's right of confrontation is the basis for the findings in the report and the certification of those results. Dr. Blum, as the certifying analyst and signatory to the report, is the person who can respond to questions about the reasons for his certification and the bases for the factual assertions in the report. The fact that NMS Labs chose not to have the individual who physically performed the testing certify the results and author the report may be an issue relevant to the weight of the certification, but it is not a confrontation issue. This is true so long as Dr. Blum's certification is based on a true analysis and not merely a parroting of a prior analysis supplied by another individual. *See id.* at 2713. Here Dr. Blum reviewed the raw data from the analysis machines, compared the three BAC results, and verified the correctness of the procedures as logged by the technicians. Based on his analysis of these materials, Dr. Blum certified the results as reflected in the report he signed.

In light of the foregoing, we conclude that the trial court erred as a matter of law when it determined that the blood-alcohol report of the blood sample taken from Appellee was inadmissible on the ground that Appellee was not afforded his right to confront the source of the testimonial statement through the testimony and cross-examination of Dr. Blum.[8] Accordingly, we reverse the order of January 13, 2011 and reinstate the October 25, 2010 judgment of sentence.

Order reversed. Judgment of sentence reinstated. Jurisdiction relinquished.

---

**8.** In light of our determination, we need not address the Commonwealth's additional is-
sues.