J-S07011-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHELE DIANE HOY, | |
| Appellant | No. 471 MDA 2015 |

Appeal from the Judgment of Sentence March 11, 2015
In the Court of Common Pleas of Centre County
Criminal Division at No(s): CP-14-CR-0000083-2012

BEFORE:  BOWES, OTT, AND FITZGERALD,* JJ.

MEMORANDUM BY BOWES, J.:                                    **FILED MARCH 18, 2016**

Michele Diane Hoy appeals from the March 11, 2015 judgment of sentence of four to twelve months incarceration, which was imposed after she was found guilty of two counts of possession of a controlled substance. After careful review, we affirm in part and reverse in part.

The following evidence was adduced at a split non-jury trial.  From January 12, 2011, through January 18, 2011, Appellant was employed as a certified nursing assistant with the Home Nursing Agency (the "Agency") and assigned to care for Roger Bierly, a hospice patient.  Mr. Bierly's caretaker, Raenelle Medzre, who lived in an apartment at the rear of the residence, picked up a prescription for methadone for Mr. Bierly on January 12, 2011, and gave it to Joyce Bierly, his wife.  N.T. Trial (Supplemental), 1/20/15, at

_____
*  Former Justice specially assigned to the Superior Court.

5.  She placed the prescription, which consisted of seven pills, on the table where Mr. Bierly's medications routinely were kept.  A second prescription for methadone was retrieved by Mrs. Bierly from the pharmacy on January 17, 2011.  Mrs. Bierly testified that, between January 12th and January 17th, none of the methadone was administered to her husband.

On the evening of the 17th, Mrs. Bierly invited Appellant to spend the night because it was snowing heavily and Appellant was scheduled to provide care in the morning.  That night, there were three persons staying in the Bierly home; Mrs. Medzre and her husband were in the apartment.  At approximately 8:00 a.m. on January 18th, registered nurse Randy Twoey arrived for a regularly scheduled visit.  She determined that Mr. Bierly needed methadone for pain.  When the nurse went to retrieve the methadone, the bottle was empty.  A thorough search of the premises failed to uncover the medications, but the nurse's notes indicated that two empty prescription bottles were located.  Ms. Twoey reported the missing drugs to the physician, her administrator, and the director of nursing.  Thereafter, investigators proceeded to the house and, in order to secure the narcotics, removed morphine that was kept in the refrigerator.

Mrs. Bierly testified that she did not take the methadone and that her husband was bedridden and incapable of administering the drugs to himself. Mrs. Bierly recalled seeing the methadone on the medicine table before she went to bed the evening of January 17th.  Although there were as many as

four other caregivers at the home during the six-day period, Appellant was the only other person who had access to the drugs after they were last seen by Mrs. Bierly on January 17th.

The administrator of the Agency, Lisa Korman, testified that she called Appellant and asked her to come to the office on January 18, 2011. After being advised that she was accused of taking some drugs from the Bierly home, Appellant agreed to submit to a drug test. Following the drug test, Ms. Korman placed Appellant on suspension pending the results and investigation. On January 21, 2011, while the results of the test were still outstanding, Appellant telephoned Ms. Korman. Appellant was upset and she wanted to resign. The administrator reminded her that the suspension was for her benefit and asked her if she wanted to think about it over the weekend. When Appellant reiterated her desire to resign, Ms. Korman advised her that she was required to personally come into the office, turn in her cell phone and other equipment, and fill out a termination form. Appellant went to the office on Monday, January 24, 2011, returned her equipment and completed the form.

Sherri O'Donald, a former agent with the Attorney General's office, was contacted by the Agency with a complaint against Appellant. After preliminary investigation, she met with Appellant. Ms. O'Donald advised Appellant that she did not have to speak with her and that she was free to go at any time. Appellant confirmed she spent the night of January 17,

2011, at the Bierly residence, she was there when the nurse arrived at 8 a.m. on the morning of January 18, and that she voluntarily submitted to a drug screening. Appellant told the agent that her physician prescribed methadone and morphine, a representation that the agent subsequently determined was false. Appellant also reported that, in the past, she had taken narcotics for back pain, specifically morphine, when people offered it to her.

Over Appellant's objection, Phyllis Chandler, a lab manager and certifying scientist for LabCorp in North Carolina, provided testimony on behalf of the Commonwealth about the results of Appellant's drug test. As a certifying scientist, she reviews all data and results for a particular sample, including the chain of custody documents. In preparation for her testimony, she conducted an independent analysis of the hard data obtained from the urinalysis performed on Appellant's urine. She explained that immunoassay performed on the sample was presumptively positive for methadone and opiates. The sample then went to confirmation testing by chromatography mass spectrometry (GCMS), which determined that the opiate present was morphine and confirmed the positive methadone result. The witness also verified the chain of custody for the sample was intact. Over objection, the lab report was admitted into evidence.

John W. Gehman, a licensed physician and owner of Juniata Valley Occupational Health in Lewistown, Pennsylvania, was called to testify. Dr.

Gehman is also a certified medical review officer, charged with reviewing the results of drug tests and interpreting the validity of the test results, which includes documenting that the chain of custody was properly maintained and the specimen handled properly. Based on the level of morphine found in Appellant's urine sample, he stated that there was no conclusive documentation that the morphine was from medication as opposed to poppy seeds or some other source. N.T., 3/3/15, at 33.

Dr. Laura Kopinski, Appellant's primary care physician in late 2010 and early 2011, testified that she did not prescribe methadone or morphine for her patient. At the close of the evidence, the court ruled from the bench. It found Appellant "guilty of unlawfully, knowingly, or intentionally possessing methadone and morphine, in violation of Section 780-113(A)(16) of Title 35, as charged." *Id*. at 39. Appellant was sentenced as previously mentioned on March 11, 2015.

Appellant filed a timely appeal to this Court and complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. She raises three issues for our review:

I.      Did the Commonwealth fail to present sufficient evidence appellant constructively possessed morphine and methadone as a result of a positive drug test?

II.     Was appellant's Sixth Amendment Right to confront and cross-examine the witnesses against her violated?

III. Did the Trial Court abuse its discretion by sentencing appellant in the aggravated range of the sentencing guidelines?

Appellant's brief at 6.

In reviewing a challenge to the sufficiency of the evidence, we examine all of the evidence admitted, even improperly admitted evidence. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa.Super. 2013) (*en banc*). We consider the evidence in the light most favorable to the verdict winner, herein the Commonwealth, drawing all possible inferences from the evidence in its favor. *Id*. When evidence exists to allow the fact-finder to determine beyond a reasonable doubt each element of the crimes charged, the sufficiency claim will fail. *Id*.

The evidence need not preclude the possibility of innocence entirely. The fact-finder is free to believe wholly or in part, whatever evidence it chooses. *Id*. Additionally, the Commonwealth may prove its case by circumstantial evidence alone. It is only when "the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances," that the defendant is entitled to relief. *Id*.

Appellant contends first that the evidence that she possessed controlled substances was insufficient to sustain the convictions. Since no controlled substances were found on her person, she maintains that under *Commonwealth v. Valette*, 613 A.2d 548 (Pa. 1992), the Commonwealth

was required to prove constructive possession. She argues that the presence of controlled substances in her bloodstream, standing alone, was legally insufficient to support a possession charge. Furthermore, Appellant characterizes the evidence that she took and imbibed Mr. Bierly's narcotic medications as conjecture and speculation.

The Commonwealth counters that "the circumstantial evidence established [Appellant] exercised 'a conscious dominion over the illegal substance' beyond the 'mere presence' of the drugs in her bloodstream." Appellee's brief at 14 (quoting **Commonwealth v. Santiesteban**, 552 A.2d 1072, 1074 (Pa.Super. 1988). In support thereof, the Commonwealth points to evidence that the prescriptions were on the medicine table within Appellant's control and went missing when only Mrs. Bierly, her husband, and Appellant were present in the home. Mr. Bierly was incapable of administering his own medications and Mrs. Bierly denied taking it.

The Commonwealth maintains further that Appellant's decision to quit her job after submitting to a drug test, but before the results were known, demonstrated consciousness of guilt. Appellant lied to the investigating officer about having a prescription for methadone and morphine. Her admission that she would take non-prescribed pain medication on occasion to relieve back pain supplies a motive. Finally, the drug tests conclusively established the presence of methadone and a presumptive presence of morphine in her system. As to the latter, the Commonwealth contends that

evidence that Mr. Bierly's morphine was tampered with at the same time as the methadone disappeared is circumstantial evidence that Appellant exercised a conscious dominion over that illegal substance as well.

We find the evidence legally sufficient to sustain the conviction for possession of methadone. The circumstantial evidence, together with the drug test results, viewed in the light most favorable to the Commonwealth as the verdict winner, supports the inference that Appellant took Mr. Bierly's methadone.

The record is not as clear with regard to the morphine. Contrary to the Commonwealth's representation, there was no evidence either that the refrigerated morphine was missing or that someone had tampered with it. The only evidence with regard to Mr. Bierly's morphine was offered by Mrs. Bierly. She testified that investigators removed all narcotics from the home, including the bottle of liquid morphine that was in the refrigerator. Mrs. Bierly explained that the morphine was taken because it was possible that some was missing. Mrs. Bierly testified she did not actually observe the morphine bottle at the time, and thus, did not prove morphine was missing. No evidence was offered by the Commonwealth that morphine was actually missing from the bottle or that the bottle had been disturbed.[1] The absence

---

[1] Assuming *arguendo* that the Commonwealth had offered proof that someone tampered with the morphine, the fact that Appellant had

*(Footnote Continued Next Page)*

of such evidence, together with the Commonwealth's own evidence that the level of morphine in Appellant's urine was consistent with the ingestion of poppy seeds or some other innocuous substance, renders the conviction for possession of morphine infirm. Thus, we reverse the conviction for possession of morphine.

Next Appellant claims that her Sixth Amendment right of confrontation was violated when the court permitted Phyllis Chandler, rather than the persons who actually performed the tests, to testify about the test results showing controlled substances in her urine.[2] "Our review of [a] Confrontation Clause issue presents us with a question of law, and thus our standard of review is plenary and our scope of review is de novo." **Commonwealth v. Weaver**, 76 A.3d 562, 569 (Pa.Super. 2013), *aff'd per curiam* **Commonwealth v. Weaver**, 105 A.3d 656 (Pa. 2014).

The Confrontation Clause in the Sixth Amendment to the United States Constitution applies to both federal and state prosecutions and provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to

_(Footnote Continued)_ _____

presumptive levels of morphine in her system would not have been sufficient to prove constructive possession of that drug. The Commonwealth would have had to offer some proof that the tampering occurred when Appellant alone had access to the substance.

[2] The Pennsylvania Constitution provides that, "[i]n all criminal prosecutions the accused hath a right . . . to meet the witnesses face to face." Pa. Const. art. I, § 9. n4. Appellant, however, does not base her claim on state constitutional grounds.

- 9 -

be confronted with the witnesses against him. . . ." U.S. Const. Amend. IV. The right is a procedural one intended to ensure the reliability of evidence through cross-examination. *See Commonwealth v. Yohe*, 39 A.3d 381, 384-385 (Pa.Super. 2012).

Appellant acknowledges that the issue herein is similar to the one in *Commonwealth v. Yohe*, 79 A.3d 520 (Pa. 2013), but she contends that the instant case is distinguishable on its facts. Therein, our Supreme Court found no confrontation violation where the laboratory's forensic toxicologist who directly supervised the lab technicians who performed the blood tests was permitted to testify as to the results. Appellant maintains that Ms. Chandler, unlike Dr. Lee Blum, the witness in *Yohe*, did not oversee the actual testing of the specimen in this case and only reviewed the results four years after completion. Appellant objected at trial to Ms. Chandler's testimony and report on this basis.

The Commonwealth counters that the instant case is directly on point with *Yohe*. Ms. Chandler analyzed the raw data from the testing, authored the report that was proffered and admitted, and certified the results. The testing occurred four years prior to trial, and admittedly Ms. Chandler was not present at LabCorp at that time. Nonetheless, she reviewed the file, compared the raw data, certified the accuracy of the results, reviewed the chain of custody, and signed the report in much the same way as Dr. Blum. The certification, according to the Commonwealth, was based on a true

- 10 -

analysis, "not merely a parroting of a prior analysis supplied by another individual."  Appellee's brief at 22.

The issue of what constitutes a testimonial statement and who can offer testimony regarding that statement for Confrontation Clause purposes has been the subject of several United States Supreme Court and Pennsylvania appellate court decisions.  Prior to the United States Supreme Court's decision in **Crawford v. Washington**, 541 U.S. 36 (2004), it was generally the view that "the Confrontation Clause did not bar the admission of out-of–court statements that fell within a firmly rooted exception to the hearsay rule."  **Ohio v. Roberts**, 448 U.S. 56 (1980) (abrogated by **Crawford**). However, in **Crawford**, the Court focused on whether a statement was testimonial in nature and held "Testimonial statements of witnesses absent from trial [can be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." **Crawford**, **supra** at 59.

Post-**Crawford**, much of the focus was on whether a statement was testimonial in nature and subject to **Crawford**.  **See Williams v. Illinois**, 132 S.Ct. 2221, 2223 (2012) (collecting cases).  In **Melendez-Diaz v. Massachusetts**, 557 U.S. 305 (2009), the issue was whether the admission of certificates of analysis, which described results of forensic testing that determined certain seized substances to be cocaine, violated the Confrontation Clause.  The defendant contended that he had a constitutional

right to confront the analysts who conducted the tests and that they should have been required to testify at trial. The Supreme Court agreed that the certificates of analysis were affidavits made under circumstances leading a reasonable person to believe they would be used at trial, and thus, testimonial statements, and the defendant had a Sixth Amendment right to confront them. Since the defendant was not afforded that right, the Court held the certificates were inadmissible.

Subsequently, this Court was presented with the issue of who is an appropriate witness to testify about a forensic report that constituted a testimonial statement under the Confrontation Clause. In **Commonwealth v. Barton-Martin**, 5 A.3d 363 (Pa.Super. 2010), we held that under **Melendez-Diaz**, neither the laboratory administrative director nor the custodian of records for the hospital where a blood alcohol analysis was performed could testify about a forensic report under the Confrontation Clause. Absent a showing that the laboratory technician was unavailable and that the defendant had a prior opportunity to cross-examine that witness, the admission of the blood alcohol results was error.

One year later, the United States Supreme Court addressed the **Barton-Martin** issue in **Bullcoming v. New Mexico**, 564 U.S. 647, 131 S. Ct. 2705 (2011). A blood alcohol content report was offered into evidence. The analyst who had completed, signed, and certified the report, did not testify. Instead, an uninvolved analyst from the same laboratory offered

testimony as to the procedures and equipment used. The Court found that the certifying analyst's report was testimonial, and held that the trial court erred in permitting that testimonial statement to come into evidence through the in-court testimony of another witness. The Court called the latter "surrogate testimony," and reasoned that the surrogate could not convey what the certifying analyst knew or observed, the methods used, or any lapses in the process. *Id*. at 2708. It concluded, "The analysts who write reports introduced as evidence must be made available for confrontation even if they have the scientific acumen of Mme. Curie and the veracity of Mother Teresa." *Id*. at 2709. In short, "The . . . analyst who must testify is the person who signed the certificate." *Id*. at 2716 (quoting *Melendez–Diaz*, *supra* at 2545).

After *Bullcoming*, our Supreme Court decided *Yohe*, *supra*. The issue was whether the testimony of Dr. Blum, who certified BAC test results, prepared and signed the report, but who did not observe or conduct the actual testing, satisfied the Confrontation Clause. The Commonwealth maintained that since Dr. Blum reviewed the raw data and generated an expert report based on his review, the right of confrontation was met. The Supreme Court agreed, distinguishing *Barton-Martin* on its facts. *See Yohe*, *supra* at 542 ("Dr. Blum did not testify as the custodian of records, nor was the lab report admitted as a business record"). This was not the situation in *Bullcoming* where the testifying witness merely read the

- 13 -

analyst's report into evidence.  Dr. Blum "did not simply parrot another analyst."  *Yohe*, 79 A.3d at 523. "[R]ather, he was involved with reviewing all of the raw testing data, evaluating the results, measuring them against lab protocols to determine if the results supported each other, and writing and signing the report." *Id*.

The Commonwealth contends that *Yohe* is on point and dispositive herein.  We agree.  Ms. Chandler, like Dr. Blum, reviewed and analyzed the raw data, authored a report containing the analysis, verified the propriety of the methods used, reviewed the chain of title of the specimen, and formed an independent opinion certifying the results.  The fact that Ms. Chandler was not present at the lab when the testing was conducted does not mandate a contrary result.  This scenario is readily distinguishable from *Melendez-Diaz*, where the prosecution proffered the report without its author who could be cross-examined regarding its contents and conclusions.  Hence, we find no merit in Appellant's claim that her constitutional right to confrontation was violated herein.

Finally, Appellant mounts a challenge to the discretionary aspects of her sentence.  She claims, without citation to authority, that her "steadfast insistence on her innocence" and "inconvenience to witnesses" were inadequate reasons to sentence her in the aggravated range.  Appellant's brief at 17.

Preliminarily, we note that, "[T]here is no absolute right to appeal when challenging the discretionary aspect of a sentence." *Commonwealth v. Cartrette*, 83 A.3d 1030 (Pa.Super. 2013) (*en banc*). In order to present such a claim on appeal, the appellant must first raise the issue in a post-sentence motion or during the sentencing proceedings. Furthermore, a defendant is required to preserve the issue in a court-ordered Pa.R.A.P. 1925(b) concise statement and a Pa.R.A.P. 2119(f) statement. *Commonwealth v. Naranjo*, 53 A.3d 66, 72 (Pa.Super. 2012). Finally, the issue must present a substantial question.

Our review of the certified record reveals that Appellant did not object at sentencing that the aggravated range sentence was improper. Nor did she file a post-sentence motion raising the issue. Hence, this discretionary sentencing claim is waived. *See Commonwealth v. Rhoades*, 8 A.3d 912, 915-16 (Pa.Super. 2010) (citations omitted) ("Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.").[3]

_____

[3] The Commonwealth argues that Appellant waived her discretionary sentencing issue by failing to present a properly developed argument in her brief. *See* Pa.R.A.P. 2119(a). We agree, and find waiver on this basis as well.

For the foregoing reasons, Appellant's conviction for possession of morphine is reversed. Since the sentence imposed for that offense is identical to and runs concurrently with the sentence imposed at Count I for possession of methadone, our disposition does not implicate the overall sentencing scheme and no remand for resentencing is required.

Appellant's conviction at Count II of possession of a controlled substance (morphine) is reversed, and the concurrent sentence of four to twelve months imprisonment imposed at that count is vacated. The judgment of sentence of four to twelve months imprisonment, which was imposed at Count I for possession of a controlled substance (methadone), is affirmed. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/18/2016