J-S89024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ALFONSO BODDIE | |
| Appellant | No. 3734 EDA 2015 |

Appeal from the Judgment of Sentence October 15, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000248-2015

BEFORE: SHOGAN, J., MOULTON, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.: **FILED FEBRUARY 28, 2017**

Alfonso Boddie appeals from the October 15, 2015 judgment of sentence entered in the Philadelphia County Court of Common Pleas. We affirm.

The trial court set forth the procedural and factual history of this matter as follows:

> On October 26, 2014, [Boddie] was arrested and charged with inter-alia, 1) Aggravated Assault pursuant to 18 Pa.C.S.A. §2702(a); 2) Rape by Forcible Compulsion pursuant to 18 Pa.C.S.A. §3121(a)(1); 3) Indecent Assault pursuant to 18 Pa.C.S.A. §3126(a)(1); 4) Sexual Assault pursuant to 18 Pa.C.S.A. §3124.1; 5) Unlawful Restraint /Serious Bodily Injury pursuant to 18 Pa.C.S.A. §2902(a)(1); 6) Recklessly Endangering Another Person

---

[*] Former Justice specially assigned to the Superior Court.

pursuant to 18 Pa.C.S.A. §2705(a); and 7) False Imprisonment pursuant to 18 Pa.C.S.A. §2903(a).

. . .

[At Boddie's bench trial, the victim] testified that in the early morning hours of October 25, 2014, at approximately 12:30 a.m., she left her apartment, in the City and County of Philadelphia, intending to go to her brother's house in another part of the city. She left after an argument with her husband and without any money. (N.T., 6/26/15, pgs. 26, 27, 28) As she approached the 4400 block of Frankford Ave, she encountered a woman who offered to help her find a ride and who, a short while later, introduced her to [Boddie] who offered to take her to her brother's house. (N.T., 6/26/15, pgs. 25, 26, 28, 48)

[Boddie] appeared to be respectful and to be non-threatening, so [the victim] accompanied [Boddie] up to his apartment, where they talked and she drank a beer. (N.T., 6/26/15, pgs. 26, 32, 50) At approximately 2:00 a.m. they drove to two separate locations looking to purchase more beer. They returned at approximately 3:30 a.m. with a few beers and a water bottle containing a pink liquid. She went up to [Boddie]'s apartment and drank more beer. (N.T., 6/26/15, pgs. 26, 31, 52)

A short while after returning, [Boddie] became angry when he couldn't find the water bottle. Attempting to calm him down[, the victim] turned on the radio, to no avail. She testified that at this point [Boddie] grabbed her and started pulling her towards the bedroom. Stalling for time, she persuaded him the let her go into the kitchen to wash her hands where she found a knife which she put in her pants and returned to the couch. (N.T., 6/26/15, pgs. 33, 34, 59) She testified that [Boddie] then pulled her onto the bed, she told him; "No, I don't want to do this." (N.T., 6/26/15, pgs. 36) He then started to remove her clothes and "put his penis in [her]." She also testified that although she attempted to fight [Boddie] off, he got further up on her and started to choke her in an attempt to further subdue her. (N.T., 6/26/15, pgs. 35, 36, 38, 62, 74, 75, 80, 81)

She told [Boddie] that she had to go to the bathroom, and instead she fled down the stairs. [Boddie], grabbing

- 2 -

her by her hair, caught her at the top of the stairs, whereupon, she turned around and started stabbing him. When [Boddie] loosened his grip, she dropped the knife and fled naked out into the street. (N.T., 6/26/15, pgs. 37, 39, 40, 63, 81)

Mr. Thomas Redstone-Brophy testified that he is employed as a sexual assault nurse examiner at the Philadelphia Sexual Assault Response Center and, that as part of his duties, he examined [the victim] that same day, at approximately 12:45 p.m. (N.T., 6/26/15, pgs. 88, 89) As part of his examination, he took pictures of her neck showing bruising, which he testified was consistent with strangulation. (N.T., 6/26/15, pgs. 92 -93)

. . .

At the conclusion of his bench trial on June 26, 2015, [Boddie] was found guilty on charges of Rape, Indecent Assault, Sexual Assault and Unlawful Restraint. [Boddie] was found not guilty of the remaining charges. On October 15, 2015, [Boddie] was sentenced to a period of confinement in a state correctional facility of 7 to 15 years on the charge of Rape. Having merged, no further penalty was imposed on the charges of Indecent Assault and Sexual Assault. The court imposed a sentence of no further penalty on the charge of Unlawful Restraint.

On October 25, 2015, [Boddie] timely filed a Motion for Post Sentence Relief pursuant to the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 720(A)(1), seeking an arrest of judgement [sic] and a new trial[.] Pa.R.Crim.P. 720(B)(1)(a)(ii) and (iv). The Court, after a hearing, denied [Boddie]'s motion on November 25, 2015.

Opinion, 7/22/16, at 1-4 ("1925(a) Op."). On December 3, 2015, Boddie filed a timely notice of appeal.

Boddie raises two issues on appeal:[1]

1. Was [Boddie] deprived of his right to confront a witness against him, as secured by the Sixth Amendment to the United States Constitution as well as Article I, Section 9 of the Pennsylvania Constitution, when the trial court ordered trial counsel to cease a portion of his cross examination of the Commonwealth's primary witness under threat of contempt?

2. Was the evidence . . . insufficient to convict [Boddie] of unlawful restraint, where the Commonwealth failed to offer any evidence that the complaining witness was exposed to a risk of serious bodily injury?

Boddie's Br. at 5 (trial court answers omitted).

In his first issue, Boddie argues that the trial court deprived him of his right to confront witnesses against him by threatening to hold his trial counsel in direct criminal contempt for repeating a question on cross-examination. While cross-examining the victim, Boddie's counsel asked where the victim had placed the knife when she returned from the kitchen:

> [BODDIE'S COUNSEL]: Why didn't you – you had the knife. Where was the knife at that stage?

_____

[1] In his Pennsylvania Rule of Appellate Procedure 1925(b) statement, Boddie also raised two issues regarding the sufficiency of the evidence to convict him of rape and sexual assault. However, Boddie has abandoned these matters on appeal to this Court, as he neither presented them in his statement of questions involved on appeal nor argued them in his brief. **See** Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); **Commonwealth v. Dunphy**, 20 A.3d 1215, 1218 (Pa.Super. 2011) (concluding that questions raised in appellant's concise statement but not subsequently developed in his brief are abandoned).

> [VICTIM]:     It was under my – after he pulled my pants off, I put it under my butt and left it there.

N.T., 6/26/15, at 67 ("N.T. Trial").  Boddie's counsel then asked whether the victim attempted to fight off Boddie's advances.  *Id.* at 67-68.  When the victim said she had not, Boddie's counsel questioned her again about the location of the knife:

> [BODDIE'S COUNSEL]:    Okay.  But you had the knife under your butt; right?
>
> [VICTIM]:     Yes, I did.
>
> [BODDIE'S COUNSEL]:    Can I mark this as D-1, which are the notes from the preliminary hearing?  And I have a copy for the Court and for the witness.
>
> (Preliminary Hearing Notes marked Exhibit D-1 for identification)
>
> [BODDIE'S COUNSEL]:    Could I approach the witness, Your Honor?  Page 14.
>
> . . .
>
> [BODDIE'S COUNSEL]:    Well, first of all, do you remember giving testimony under oath at a preliminary hearing before the Honorable Karen Yvette Simmons on January the 8th of 2015?
>
> [VICTIM]:     Yes, I do.
>
> [BODDIE'S COUNSEL]:    Do you remember being under oath at that time?
>
> [VICTIM]:     Yes, I do.
>
> [BODDIE'S COUNSEL]:    Okay.  I'm going to direct your attention to page 14, which I've opened before you, and I'll read it and you just tell me if this is correct.  "What happened—
>
> [THE COURT]: Line. What's so hard about me saying page and line that you can't follow that direction?

[BODDIE'S COUNSEL]:    Okay.  The very top of the page, Your Honor.

[THE COURT]: I don't want to hear top of the page.  I want to hear page and line.

[BODDIE'S COUNSEL]:    Line 1, page 14, Your Honor.

[THE COURT]: There we go.

[BODDIE'S COUNSEL]:    "QUESTION:   What happened after he pulled off your shirt?

> ANSWER:  He pushed me back like this and I had the knife like this and I went like this around the top of my neck and I put it in the pillow and I put my arms back like this with my right hand holding the knife, my right hand holding the knife in the pillow.
>
> QUESTION:  So I can see – if I can get around what you described right for the record, you had the knife under your back?
>
> ANSWER  Right—

[VICTIM]:    Under my butt.  This statement, this is not right.

[BODDIE'S COUNSEL]:    Just one second.

> "—and when I went back, he was kind of bending down so he didn't really see when I went like this, so I held it.
>
> QUESTION:  So you reached for the knife with your hand and put it behind your head?  Is that what you're indicating?
>
> ANSWER:  Yes.
>
> QUESTION:  Where was it behind your head?  Behind a pillow?
>
> ANSWER:  It was under a pillow."

So did I read that correctly?

[VICTIM]:    Okay, I don't know – I'm going to explain this, how this is, okay, again.  All right?  I had the knife

- 6 -

under my butt. Okay? After that I pulled the knife out, I put it behind me after he pushed me back. He still didn't have his clothes fully finish to be off. And this is what I did. And I stayed under the bed like this squeezing the knife with everything I had, and that's it. That's exactly what happened.

[BODDIE'S COUNSEL]: Okay. But you would agree here that there's no mention of having the knife behind your butt here; right?

[VICTIM]: There is – in another statement it's under my butt.

[BODDIE'S COUNSEL]: Okay, but what I've shown you here—

THE COURT: Excuse me, [victim]—

[VICTIM]: Somebody made a mistake—

THE COURT: Excuse me.

[VICTIM]: Sorry.

THE COURT: The way this works is you speak when you're asked a question. All right? Now you're just arguing with the witness. So move on.

[BODDIE'S COUNSEL]: Okay, Your Honor.

So when you had the knife behind your butt, according to you, and he was like – he went further down on the bed and then you put the knife behind the pillow or behind your head. Is that what you're testifying to?

THE COURT: [Counsel], you're just repeating yourself. She's covered this. I said move on. Move on doesn't mean ask the same question again. It means move on. Move on to another page, another issue, or just say you have no more questions. But move on.

[BODDIE'S COUNSEL]: So when you had the opportunity to move the knife from behind your butt—

THE COURT: [Counsel], if you ask another question about the knife, the butt, the pillow, you will be in contempt of court. I have made my ruling. Move on.

> [BODDIE'S COUNSEL]:    Your Honor, may I ask her why she didn't use the knife to stab on that occasion?
>
> THE COURT: She's already answered that question. Move on.

*Id.* at 68-74.   Boddie argues that the trial court curtailed his Sixth Amendment right to confront and "impeach the Commonwealth's sole fact witness."   Boddie's Br. at 20.   According to Boddie, his trial counsel attempted to establish extrinsic evidence of a prior inconsistent statement and, after the court admonished the victim for speaking over counsel and admonished trial counsel for arguing with the victim, the trial court improperly "ordered counsel to end that line of questioning."  *Id.* at 20-21. Boddie argues that he was attempting to elicit crucial testimony that would discredit the victim and "it is inconceivable that she would be able to sneak the knife from tight pants and bring it up behind her head all while [Boddie] was supposedly violently pulling her pants off." *Id.* at 22.

Both the Sixth Amendment to the United States Constitution and Article One, Section Nine of the Pennsylvania Constitution secure the right of the accused to confront witnesses against him.  *See* U.S. Const. amend. VI; Pa. Const. art. I, § 9.   "Whether [a]ppellant was denied [his] right to confront a witness under the confrontation clause of the Sixth Amendment is a question of law for which our standard of review is *de novo* and our scope of review is plenary."  *Commonwealth v. Yohe*, 39 A.3d 381, 384 (Pa.Super. 2012) (quoting *Commonwealth v. Dyarman*, 33 A.3d 104, 106 (Pa.Super. 2011)).

The Confrontation Clause "provides that all criminal defendants enjoy 'the right to confront and cross-examine adverse witnesses.'" **Commonwealth v. Rosser**, 135 A.3d 1077, 1087-88 (Pa.Super. 2015) (quoting **Commonwealth v. Laird**, 988 A.2d 618, 630 (Pa. 2010)). "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." **Davis v. Alaska**, 415 U.S. 308, 315-16 (1974) (quoting 5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940)). However, this right "is not absolute." **Rosser**, 135 A.3d at 1088. "The trial court may place reasonable limits on defense counsel's cross examination of a prosecution witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" **Id.** (quoting **Delaware v. Van Arsdall**, 475 U.S. 673, 679 (1986)). "Generally speaking, the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." **Id.** (quoting **Delaware v. Fensterer**, 474 U.S. 15, 20 (1985)).

In **Rosser**, we articulated a two-part test to determine "whether a limitation on cross-examination violates the Confrontation Clause":

> First, we inquire whether the limitation prejudiced the examination of that particular witness. In other words, absent the limitation, would the jury have received a "significantly different impression" of the witness's credibility? [**Van Arsdall**, 475 U.S.] at 679-80[]. Second, if there was error, we must determine whether it was

harmless beyond a reasonable doubt; if so, reversal is not warranted. *Id.* at 681[].

*Id.*

We conclude that Boddie's first issue is meritless. The trial court, as the fact-finder, instructed counsel to move on from the issue "[w]hen it became clear to the Court that counsel's questions regarding the placement of the knife during Defendant's assault . . . was becoming repetitive." 1925(a) Op. at 6. When examined in the context of the exchange between the trial court, counsel, and the victim, it is clear that the trial court would not have received a "significantly different impression" of the victim's credibility had it allowed trial counsel to continue inquiring about the preliminary hearing transcript. Under these circumstances, we cannot say that such testimony would have modified the victim's credibility such that Boddie was deprived of his right to confront the victim.

Further, even if we were to assume such testimony was important in assessing the victim's credibility, it is clear that counsel's line of questioning became repetitive. After counsel had asked the victim about her preliminary hearing testimony, he received an answer that varied from that preliminary hearing testimony. The trial court could readily see that the victim's testimony had changed from her preliminary hearing and it concluded that further questioning would be repetitive or marginally relevant. 1925(a) Op. at 7. Considering that "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about . . . interrogation that is repetitive or

only marginally relevant," ***Van Arsdall***, 475 U.S. at 679 (quoting ***Fensterer***, 474 U.S. at 20), we conclude that curtailing this line of questioning did not violate Boddie's right of confrontation.[2]

In his second issue, Boddie argues that the evidence presented at trial was insufficient to convict him of unlawful restraint because the victim did not suffer serious bodily injury and the Commonwealth did not prove "that she was in actual danger of such injury." Boddie's Br. at 24. According to Boddie, the evidence presented showed that his grip on the victim's throat, "was clearly insufficient to hold her down, as she plainly testified that she was able to roll away from him and get away." ***Id.*** Boddie also points to the testimony of the sexual assault nurse examiner, who did not suggest that the injuries to the victim's legs and throat were serious or that they could lead to "a substantial risk of death or . . . cause[] serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." ***Id.***

---

[2] Boddie also attempts to raise an evidentiary issue within his Confrontation Clause argument, alleging that under Pennsylvania Rule of Evidence 613, counsel was merely attempting to "establish that the extrinsic evidence says what counsel alleges it says," and, when faced with this evidence, the victim "instead . . . simply restated testimony from her direct examination and then went on a rant unrelated to the simple question posed." Boddie's Br. at 21. Boddie, however, did not raise this evidentiary question at trial or in his 1925(b) statement and, thus, he has waived this claim. ***See Commonwealth v. Smith***, 606 A.2d 939, 942-43 (Pa.Super. 1992) (finding waiver where appellant failed to object at trial to court's limitation of cross-examination); Pa.R.A.P. 302; Pa.R.A.P. 1925(b)(4)(vii).

This Court's standard for reviewing sufficiency of the evidence claims is well settled:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Rodriguez*, 141 A.3d 523, 525 (Pa.Super. 2016) (quoting *Commonwealth v. Tarrach*, 42 A.3d 342, 345 (Pa.Super. 2012)).

A person may be convicted of unlawful restraint "if he knowingly . . . restrains another unlawfully in circumstances exposing him to risk of serious bodily injury." 18 Pa.C.S. § 2902(a)(1). "Serious bodily injury" is "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. The Commonwealth must prove that the victim "was exposed to an actual danger of serious bodily

injury." ***Commonwealth v. Schilling***, 431 A.2d 1088, 1092 (Pa.Super. 1981).

We conclude that the evidence was sufficient to convict Boddie of unlawful restraint. The victim testified that after Boddie put his penis in her, Boddie put his hand around her throat, squeezing until she could not breathe and was "ready to go out." N.T. Trial at 38. The nurse examiner also testified that the victim had injuries consistent with strangulation, including bruising and diffuse erythema. ***Id.*** at 92-94. In the context of aggravated assault, we have held that choking a rape victim demonstrates an attempt to inflict serious bodily injury. ***See Commonwealth v. Russell***, 460 A.2d 316, 320 (Pa.Super. 1983). Considering that both aggravated assault and unlawful restraint use the same definition of "serious bodily injury" found in section 2301 of the Crimes Code, we conclude that the evidence was sufficient to support the trial court's finding, beyond a reasonable doubt, that Boddie placed the victim at risk of serious bodily injury.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017

- 13 -