J-A10017-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| RAYMOND E. AYALA | |
| Appellant | No. 3085 EDA 2015 |

Appeal from the Judgment of Sentence dated April 2, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012021-2009

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| RAYMOND E. AYALA | |
| Appellant | No. 3087 EDA 2015 |

Appeal from the Judgment of Sentence dated April 2, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012024-2009

BEFORE: DUBOW, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SOLANO, J.: **FILED SEPTEMBER 14, 2017**

Appellant, Raymond E. Ayala, appeals from the judgment of sentence imposed after the trial court convicted him of two counts each of first-degree murder, criminal conspiracy, possessing an instrument of crime (PIC), and

recklessly endangering another person.[1]  We affirm.

The trial court detailed the factual background of this case as follows:

On October 23, 2008, at approximately 12:58 p.m., [Appellant] and co-defendant Jose Ortiz, shot and killed decedents Jose Ortiz [coincidentally the same name and no relation to co-defendant Jose Ortiz] and Roberto Beltran at the corner of North Mutter Street and West Indiana Avenue. [Appellant] and co-defendant Ortiz were paid to kill Jose Ortiz by co-defendant Miguel Molina, who ran an illicit drug operation. There were a number of conversations between these three men regarding the "elimination" of Mr. Ortiz, culminating in the homicides on October 23, 2008.  Shortly after the last conversation with Molina, [Appellant], wielding a handgun, and Ortiz, an M-90 rifle, shot the decedents multiple times, climbed through a hole in a fence, and fled the scene.  Dr. Edwin Lieberman performed autopsies on both decedents, and his reports were admitted by stipulation.  As to Mr. Ortiz, Dr. Lieberman concluded that the cause of death was multiple gunshot wounds, and that the manner of death was homicide. Dr. Lieberman found that Mr. Ortiz suffered sixteen gunshot wounds, including wounds to his head, neck, buttock, abdomen, iliac crest, right thigh, left shoulder blade, and right chest.  Dr. Lieberman concluded that Mr. Beltran's cause of death was multiple gunshot wounds, and the manner of death was homicide.  He found that Mr. Beltran suffered nine gunshot wounds.  N.T. 04/01/15, pp. 114-214; N.T. 04/02/15, pp. 49-52.

When Sergeant James Keenan of the Philadelphia Police Department arrived at the crime scene, he observed the two men lying on the ground with medics attempting to resuscitate one of them.  After receiving information about the two shooters, Sergeant Keenan and other officers started searching the railroad tracks behind Indiana Avenue, but were unsuccessful in apprehending the perpetrators.  Sergeant Keenan then went to the homicide unit to be interviewed by the detectives investigating these crimes.  N.T. 04/01/15, pp. 116, 124.

Police Officer Gregory Yatcilla of the Crime Scene Unit responded to the crime scene to assist in the investigation.

---

[1] 18 Pa.C.S. §§ 2502, 903, 907, and 2705, respectively.

Upon arrival he, along with other members of his unit, took photographs and collected physical evidence, including fired cartridge casings that were subsequently sent to the firearms identification unit for comparison. Officer Yatcilla testified that there were fifteen shell casings found at the scene. N.T. 04/01/15, pp. 141-142.

Additionally, counsel submitted ballistics testimony by stipulation. Firearms Examiner Officer Peter Krimski testified that he examined fifteen fired cartridge casings, which were found at the scene. They had a caliber of 7.62 X 39 MM. The officer testified that these rounds were used for military purposes, and are capable of being chambered by M-90's, the gun possessed by co-defendant Ortiz. Furthermore, he examined fragments found in the body of decedent Ortiz. He came to a conclusion based on a reasonable degree of scientific certainty that they were .38/.357 caliber cartridges. N.T. 04/02/15, pp. 57-58.

Both [Appellant] and Ortiz were arrested on November 3, 2008 in the area of Jasper and East Lippencott Streets. N.T. 04/02/15, pp. 32-37.

The key witness in the prosecution's case was Alfredo Hernandez, a former associate of Miguel Molina. Hernandez testified that he was present when Molina directed [Appellant] and co-defendant Ortiz to "eliminate" Jose Ortiz. [Roberto Beltran was not an intended target and just happened to be present when the shots were fired]. Hernandez saw [Appellant] with a handgun, and [co-defendant] Ortiz with a rifle. He heard the shootings and saw them go through a fence and back down the hill towards the tracks from the area where the killings took place. The witness testified that on October 24, 2008, he had a conversation with co-defendant [Ortiz], wherein Ortiz told him that he killed the two victims on October 23, 2008. N.T. 04/01/15, pp. 197-265.

The Commonwealth also introduced the testimony of Luis Rodriguez, taken at the preliminary hearing, after a finding that this witness was unavailable for trial. Rodriguez testified that, as with Hernandez, he worked for Molina's criminal drug operation. In his testimony, Rodriguez stated that he was on the train tracks below the street when Molina directed [Appellant] and co-defendant Ortiz to kill Mr. Ortiz. He further stated that he heard the gunshots and then saw [Appellant] and [co-defendant] Ortiz

running down the train tracks after climbing through a hole in a fence on Mutter Street. Rodriguez testified that he saw [co-defendant] Ortiz carrying a bag with the M-90 rifle in it, and [Appellant] with a handgun, and that both men left the scene in a white Mercedes driven by Miguel Molina. N.T. 09/22/09, pp. 121-160.

At trial, Detective Brian Peters testified as to the unavailability for trial of Luis Rodriguez. Detective Peters testified to the man's last known address, but that after an extensive search, police authorities were unable to locate Rodriguez for trial. Furthermore, Rodriguez had himself been shot six times on November 12, 2008 because he had attempted to leave Molina's illegal drug operation. He had been in a relocation program for his safety, but left on his own accord. At the preliminary hearing Rodriguez displayed the stitches between his chest and abdomen received during medical treatment for his gunshot wounds. N.T. 04/01/15, pp. 33-70.

In addition, Detective Joseph Centeno also testified about his effort to locate Rodriguez, including a lead that the witness was in Buffalo, New York. Lastly, Officer William Hunter, a detective in the Philadelphia District Attorney's office, searched for Rodriguez in the witness's neighborhood. He also scanned local databases. Officer Hunter had previously brought both Hernandez and Rodriguez to court for [Appellant's] preliminary hearing. Detective Timothy Bass, a homicide detective assigned to the Fugitive Squad, also testified about his unsuccessful efforts to locate Rodriguez. He searched the Pennsylvania Prison System, the FBI federal inmate locator and the local hospitals. He did not find Luis Rodriguez. N.T. 04/01/15, pp. 71-87, 88 102; N.T. 04/02/15, pp. 6-15.

Trial Court Opinion, 7/19/16, at 2-5 (footnotes omitted).

After hearing the above evidence, the trial court, on April 2, 2015, found Appellant guilty of the aforementioned crimes and sentenced him to life in prison. On April 6, 2015, Appellant filed a post-sentence motion which was denied by operation of law on October 6, 2015. Appellant filed this timely appeal on October 12, 2015.

Appellant presents four issues for our review:

1. Did the trial judge err in finding the key Commonwealth witness, Luiz Rodriguez, to be unavailable and therefore allowing the Commonwealth to use his preliminary hearing notes of testimony? Did the evidence show the Commonwealth failed to use good faith, diligent and timely efforts to locate Mr. Rodriguez? Should [Appellant] be granted a new trial due to the use of the preliminary hearing notes[?] --- Judge Byrd affirmed the judgment of sentence.

2. Did the trial judge err in allowing the admission of the preliminary hearing notes since they denied [Appellant] his right of confrontation under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution? Was there a full opportunity to cross-examine since there was only one interpreter present, thereby preventing a discussion with the client, since there were new developments after the preliminary hearing, and since there was only limited discovery provided? Should [Appellant] be granted a new trial? --- Judge Byrd affirmed the judgment of sentence.

3. Were the verdicts for two counts of murder of the first degree, two counts of criminal conspiracy, two counts of possessing an instrument of crime and two counts of recklessly endangering another person not supported by sufficient evidence, particularly due to the highly conflicting and contradictory testimony? --- Judge Byrd affirmed the judgment of sentence.

4. Were the verdicts for two counts of murder of the first degree, two counts of criminal conspiracy, two counts of possessing an instrument of crime and two counts of recklessly endangering another person against the weight of the evidence? Was the evidence further against the weight of evidence due to the very conflicting and contradictory testimony? --- Judge Byrd affirmed the judgment of sentence.

Appellant's Brief at 6-7.

**The Admission of Luis Rodriguez's Preliminary Hearing Testimony**

In his first two issues, Appellant claims that the trial court erred in admitting the preliminary hearing testimony of Luis Rodriguez. Appellant asserts that the trial court erred by finding that Mr. Rodriguez was unavailable at the time of trial because "the Commonwealth failed in its burden of proof and did not show good faith and diligent, timely efforts to locate Mr. Rodriguez." Appellant's Brief at 52. Appellant additionally contends that the trial court, by admitting the notes of Mr. Rodriguez's testimony from the preliminary hearing, violated Appellant's constitutional right to confrontation and cross-examination. *Id.* at 63.

We note our standard of review:

> "Questions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion." An abuse of discretion is not merely an error of judgment; rather, discretion is abused when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." ...

*Commonwealth v. Trinidad*, 96 A.3d 1031, 1036 (Pa. Super. 2014) (citations omitted). To the extent that Appellant raises a constitutional claim and asserts the violation of his right to confront and cross-examine Mr. Rodriguez, his challenge raises a question of law, our standard of review regarding the trial court's admission of the contested testimony is *de novo*, and our scope of review is plenary. *Commonwealth v. Mitchell*, 152 A.3d

355, 358 (Pa. Super. 2016), *citing Commonwealth v. Yohe*, 39 A.3d 381, 384 (Pa. Super. 2012).

*Reasonable Efforts by the Commonwealth under Evidence Rule 804(b)*

Rule 804(b) of the Rules of Evidence provides an exception to the hearsay rule for the admission of former testimony by an unavailable witness:

The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

(1)  *Former Testimony.* Testimony that:

(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

(B) is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Rule 804(a) describes those situations when a witness will be deemed "unavailable" for purposes of Rule 804(b), including the following:

**Criteria for Being Unavailable.** A declarant is considered to be unavailable as a witness if the declarant:

. . .

(5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:

(A)  the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) . . . .

But this paragraph (a) does not apply if the statement's proponent procured or wrongfully caused the declarant's unavailability as a witness in order to prevent the declarant from attending or testifying.

Here, Appellant maintains that Rule 804(a)(5) was not met because the Commonwealth "had six or seven months to locate the witnesses from the day of setting the trial until the day of trial" and nevertheless failed to produce Rodriguez. Appellant's Brief at 53-54. Appellant states that it "was shocking that the Commonwealth made almost no effort until the time of trial." *Id.* at 54. Appellant additionally asserts that the efforts of the Commonwealth recounted at trial were "inadequate," and the Commonwealth should have used "social media or other modern means" to locate Mr. Rodriguez. *Id.* at 62. We disagree.

Where the Commonwealth seeks to admit a missing witness' prior recorded testimony, a "good faith" effort to locate the witness must be established. ***Commonwealth v. Jackson****,* 344 A.2d 842 (Pa. 1975). "The test for a witness's unavailability is whether the *prosecution* has made a good faith effort to produce the live testimony of the witness. The length to which the prosecution must go to produce the testimony is a question of reasonableness." ***Commonwealth v. Melson***, 637 A.2d 633, 638 (Pa. Super. 1994) (emphasis in original, citations omitted), ***appeal denied****,* 647 A.2d 509 (Pa. 1994). The Supreme Court has stated that the Commonwealth is not required to "establish that the witness has disappeared from the face of the earth." ***Commonwealth v. Blair***, 331 A.2d 213, 215 (Pa. 1975). "**It is within the discretion of the trial court to determine what constitutes a good faith effort to locate a missing**

**witness**, and the decision of the court will not be overturned absent an abuse of discretion." ***Commonwealth v. Lebo***, 795 A.2d 987, 990 (Pa. Super. 2002) (emphasis added, citations omitted).

Instantly, the trial court concluded that "[t]he measures taken by the Philadelphia Police Department and the Philadelphia District Attorney's Office . . . were . . . reasonable means to procure the witness's presence for trial." Trial Court Opinion, 7/19/16, at 8-9. We discern no abuse of discretion in this determination. The trial court referenced the Commonwealth's efforts in its recitation of the evidence presented at trial, noting that Detective Peters conducted an "extensive search" for Mr. Rodriguez, who had been shot several times, placed in a relocation program for his safety, and then left on his own accord. Trial Court Opinion, 7/19/16, at 4. The trial court referenced Detective Centeno's pursuit of a lead that Mr. Rodriguez was in Buffalo, and Officer Hunter's search for Mr. Rodriguez in his local neighborhood, as well as in local databases. ***Id.*** Finally, Detective Bass testified to searching records of the Pennsylvania Prison System, the FBI inmate locator, and local hospitals. ***Id.*** at 4-5. On this record, we discern no abuse of discretion by the trial court in finding that these efforts to locate Mr. Rodriguez were reasonable.

### *Right to Confrontation*

Appellant also claims that the admission of Mr. Rodriguez's testimony from the preliminary hearing violated his right of confrontation under the United States and Pennsylvania Constitutions. He asserts that he was

deprived of a "full and complete opportunity to cross-examine at the preliminary hearing." Appellant's Brief at 63. Appellant contends that counsel conducted "a very brief cross-examination" of Mr. Rodriguez because he was "using it more to learn things about the case than to utilize the cross-examination for trial purposes." *Id.* at 67. Appellant also expresses a concern that because there was only one interpreter, counsel "could not consult with [Appellant] to get issues or information to cross-examine Mr. Rodriguez on points he was testifying to." *Id.* at 67-68.

The Pennsylvania Supreme Court has stated:

> Under both the Pennsylvania and United States Constitutions, a criminal defendant has a right to confront and cross-examine the witnesses against him. *Commonwealth v. Bazemore*, 531 Pa. 582, 614 A.2d 684, 685 (1992) (*citing Commonwealth v. McGrogan*, 523 Pa. 614, 568 A.2d 924, 927 (1990)). It is well-established, however, that the introduction of an unavailable witness's prior recorded testimony from a preliminary hearing is admissible at trial and will not offend the right of confrontation, provided the defendant had counsel and a full opportunity to cross-examine that witness at the hearing. *Commonwealth v. Paddy*, 569 Pa. 47, 800 A.2d 294, 312-13 (2002); *Commonwealth v. Chmiel*, 558 Pa. 478, 738 A.2d 406, 417-18 (1999), *cert. denied,* 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000); *Commonwealth v. Rizzo,* 556 Pa. 10, 726 A.2d 378, 380 n. 2 (1999); *Bazemore*, 614 A.2d at 687; *Commonwealth v. Chestnut*, 511 Pa. 169, 512 A.2d 603, 605 (1986); *Commonwealth v. Duncan,* 473 Pa. 62, 373 A.2d 1051, 1054 (1977); *Commonwealth v. Johnson*, 758 A.2d 166, 169 (Pa. Super. 2000).

*Commonwealth v. McCrae*, 832 A.2d 1026, 1035 (Pa. 2003). The Commonwealth may not be deprived of its ability to present inculpatory evidence at trial merely because the defendant, despite having the opportunity to do so, did not cross-examine the witness at the preliminary

hearing stage as extensively as he might have done at trial.

*Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 542 (Pa. Super. 1995)

(citation omitted).  We have explained:

> The decisions of our Courts are clear that the admissibility of former testimony and its ability to withstand Confrontation Clause challenges derives not from the actual conduct or content of cross-examination, *but from its availability.* **See Commonwealth v. Wholaver***,* 605 Pa. 325, 989 A.2d 883, 904 (2010).  Indeed, no less an authority than the United States Supreme Court has validated this limitation on application of the Confrontation Clause.  That Court has held and reaffirmed that "there may be some justification for holding that the opportunity for cross-examination of a witness [at] a preliminary hearing satisfies the demands of the confrontation clause where the witness is shown to be actually unavailable...." *California v. Green,* 399 U.S. 149, 165–66, 90 S.Ct. 1930, 26 L.Ed.2d 489 (quoting *Barber v. Page,* 390 U.S. 719, 725–726, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968)). Consistent with such pronouncements, **the Supreme Court of Pennsylvania has recognized as well that the opportunity to cross-examine a witness, rather than its actual occurrence, fulfills the constitutional right of confrontation**:

> > Where the defendant has had the opportunity to cross-examine a witness at a preliminary hearing, probing into areas such as bias and testing the veracity of the testimony, cross-examination, and thus confrontation, within the meaning of the Sixth Amendment has been accomplished.  This is particularly so in cases where, as here, the defendant was represented by the same counsel at the preliminary hearing and at trial.

> *Wholaver,* 605 Pa. 325, 989 A.2d 883, 904 (2010).

*Commonwealth v. Stays*, 70 A.3d 1256, 1265 (Pa. Super. 2013)

(emphasis added).

Our review contradicts Appellant's argument that his confrontation

rights were violated.  After the Commonwealth's direct examination of Mr.

Rodriguez, he was cross-examined by the respective counsel for Appellant's two co-defendants. Appellant's counsel then conducted his cross-examination, during which he made several key points. *See* N.T., 9/22/09, at 155-167. Although Mr. Rodriguez testified that Appellant "sold drugs" and was "a contract killer," Appellant's counsel's cross-examination of Mr. Rodriguez established the following:

> **Counsel:** You did not see my client shoot the gun . . . correct?
>
> **Mr. Rodriguez:** No.
>
> **Counsel:** You never saw my client shoot a gun, did you?
>
> **Mr. Rodriguez:** No.

N.T., 9/22/09, at 159-160; *see also, id.* at 161. Appellant's counsel also elicited from Mr. Rodriguez testimony that he delayed communicating with the police about his knowledge of Appellant's crimes until he was "picked up" by police, and that once at the police station, he "couldn't leave until [he] spoke to an officer." *Id.* at 163-164. At the close of testimony, Appellant's counsel moved for "discharge generally," stating: "there's no one that saw my client shoot anyone. They saw him afterwards with a gun. That's it." *Id.* at 174. Counsel was partially successful; the trial court replied that it would "discharge the POW."[2] *Id.*

---

[2] The court's reference was to the charge for Prohibited Offensive Weapons set forth in 18 Pa.C.S. § 908 ("[a] person commits a misdemeanor of the first degree if, except as authorized by law, he makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon").

With regard to the availability of interpreters, the trial court noted prior to the witnesses' testimony that Appellant's counsel had met with Appellant "with the interpreter." N.T., 9/22/09, at 4. When Appellant's counsel expressed his concern that there were not enough interpreters for the defendants and witnesses, the court responded:

> The bottom line is [due to budget constraints] we have one interpreter; that's it. There's nothing I can do about it. We'll do what we can. If you feel the need to talk to your client in the middle of the hearing, we'll have the interpreter help you out. There's nothing I can do.

*Id.* at 7. Our review of the preliminary hearing transcript reveals no indication that Appellant's confrontation rights were hindered by the limited availability of the interpreter, and Appellant's brief identifies no specific examples of such hindrance. We note that on two occasions, Mr. Rodriguez answered Counsel's questions in English. N.T., 9/22/09, at 156, 166.

On this record, we find Appellant had a full opportunity to cross-examine Mr. Rodriguez as prescribed by our case law. *See e.g., Stays*, 70 A.3d at 1265. Accordingly, the admission of Mr. Rodriguez's testimony at trial did not violate Appellant's confrontation rights.

### Sufficiency and Weight Claims

In his third and fourth issues, Appellant challenges the sufficiency and weight of the evidence. With both claims, Appellant argues that his convictions should be reversed because the evidence presented at trial was "conflicting, speculative and contradictory." Appellant's Brief at 50-51; 68-

81.[3] Throughout his argument challenging the sufficiency of the evidence, Appellant in actuality refers to the weight, rather than the sufficiency, of the evidence.[4] Appellant's Brief at 68-79. Specifically, Appellant states "[t]he problem with the convictions was the evidence of conflicting, inconsistent and speculative testimony." *Id.* at 69. Appellant argues:

> Having listed the elements of the crime, obviously looking at the record, there is no eyewitness testimony. Even if there were inferences, there was very conflicting testimony. It is the conflicting and contradictory testimony that creates the insufficiency of evidence.

Appellant's Brief at 73. Appellant's sufficiency argument fails because it is really a weight argument. *See Trinidad*, 96 A.3d at 1038 (variances in testimony go to the credibility of the witnesses and not the sufficiency of the evidence); *see also Commonwealth v. Wilson*, 825 A.2d 710, 713–714

---

[3] In the section of his brief addressing his weight argument, Appellant states that he "would incorporate by reference his argument on sufficiency, including the listing of the elements of the crimes." Appellant's Brief at 79-80.

[4] When examining the sufficiency of the evidence:

> [O]ur standard is whether, viewing all the evidence and reasonable inferences in the light most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted . . . [and] we do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

*Commonwealth v. Kane,* 10 A.3d 327, 332 (Pa. Super. 2010) (citation omitted).

(Pa. Super. 2003) (sufficiency of the evidence claim does not involve an analysis of witnesses' credibility). We have explained:

> The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence and to assess the credibility of the witnesses. ***Commonwealth v. Johnson,*** 668 A.2d 97, 101 (Pa. 1995). ... An appellate court cannot substitute its judgment for that of the [finder of fact] on issues of credibility. ***Commonwealth v. DeJesus,*** 860 A.2d 102, 107 (Pa. 2004).

***Commonwealth v. Palo,*** 24 A.3d 1050, 1055 (Pa. Super. 2011), ***appeal denied,*** 34 A.3d 828 (Pa. 2011); ***see also Commonwealth v. Griffin,*** 65 A.3d 932, 939 (Pa. Super. 2013), ***appeal denied,*** 76 A.3d 538 (Pa. 2013). We may not re-weigh the evidence and substitute our judgment for that of the trial judge, who sat as the fact-finder at Appellant's bench trial. Accordingly, both Appellant's sufficiency and evidentiary claims are without merit.

In sum, our review does not support Appellant's assertions of error. We therefore affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/14/2017