J-S73033-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| KIRBY JOHN MARTIN, | : | |
| | : | |
| Appellant | : | No. 787 MDA 2017 |

Appeal from the Judgment of Sentence April 18, 2016
in the Court of Common Pleas of Adams County,
Criminal Division, at No(s): CP-01-CR-0000837-2015
CP-01-CR-0000884-2015

BEFORE: OLSON, DUBOW, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED JANUARY 04, 2018**

Kirby John Martin (Appellant) appeals from his April 18, 2016 aggregate judgment of sentence of five to ten years of imprisonment entered after a jury found him guilty of four counts of person not to possess a firearm. Counsel has filed a petition to withdraw and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967). We affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

On May 17, 2015, Appellant rented room 114 at the Three Crowns Motor Lodge in Gettysburg. Appellant and Paige Morris stole an axe and five firearms (45 Long Colt pistol revolver, Just Right carbine nine millimeter assault rifle, Circuit Judge 45 Long Colt rifle, double barrel shotgun, and a starter pistol) from the apartment of Kanyon Crutcher, and transported them back to room

_____

*Retired Senior Judge assigned to the Superior Court.

114. Appellant photographed the firearms on the bed in room 114, and used the photographs in text conversations with different people while attempting to sell the firearms. After handling each firearm, Appellant wiped it clean with a bandana and hid it under the mattress.

On the evening of May 19, and into the early morning hours of May 20, Nathan Gilbert and Autumn Doyle drank alcohol and consumed cold medicine with Appellant and Morris in room 114. At approximately 12:30 a.m., Appellant gave his wallet to Morris for safekeeping, and he and Gilbert left the motel room. Appellant placed the 45 Long Colt pistol under the driver's seat of Doyle's Geo Prizm, and drove away from the motel with Gilbert.

At 3:45 a.m. several officers were dispatched to neighboring Cumberland Township for suspicious individuals who were walking around residences with flashlights. Upon hearing that police were on their way, Appellant and Gilbert fled from the immediate area in the Geo Prizm. Appellant stopped on Maple Avenue and parked the vehicle with the right hand tires on the grass. Appellant and Gilbert exited the vehicle and ran in opposite directions, agreeing to meet later at a nearby laundromat.

Dispatch notified responding police that the suspicious individuals had fled the area in a vehicle. Upon arriving in the area, Sergeant Larry Weikert observed a Geo Prizm parked on Maple Avenue; it was empty but still hot to the touch. Officer Eric Yost looked through the window of the vehicle and

observed a loaded 45 Long Colt pistol revolver on the floorboard of the driver's seat, next to the gas pedal.

The officers canvassed the surrounding area in an attempt to locate the occupants of the vehicle, including the area outside a laundromat approximately 500 yards away. On the initial pass, Sergeant Weikert did not observe anyone in the area. On a second pass outside the laundromat, at approximately 4:20 a.m., Sergeant Weikert observed Appellant lying on a bench. Appellant was sweating profusely and breathing heavily. Sergeant Weikert approached Appellant and learned that Appellant was staying at the Three Crowns Motor Lodge, and was "waiting on a ride from [Autumn Doyle,]" who was also staying in room 114. N.T., 1/27/2016, at 30, 40.

Officers conducted a weapons patdown of Appellant, and located a cell phone and a key for room 114 at the Three Crowns Motor Lodge. Sergeant Weikert proceeded to the motel room. Doyle and Morris, still intoxicated, answered the door. The room was secured, and a search warrant was executed on the room at 2:30 p.m. Two firearms (the Just Right carbine nine millimeter assault rifle and the Circuit Judge 45 Long Colt rifle) were located under the mattress of one of the beds in the motel room, along with shotgun shells, an axe, and a receipt for one of the firearms from Gander Mountain, in the name of Kanyon Crutcher. Appellant's driver's license was found in a wallet inside Morris's purse, which was lying on a bed in the room.

A search warrant was also obtained for the cell phones of Appellant and Gilbert. A search of Appellant's phone revealed: (1) selfies of Appellant in room 114 at Three Crowns Motor Lodge; (2) photographs of the Just Carbine and 45 Long Colt revolver on the bedspread in Room 114, dated 5/19/2015; (3) photograph of the Circuit Judge on the bedspread in Room 114, dated 5/19/2015; (4) photograph of Appellant and Morris; (5) text message conversations about selling the firearms; and (6) several calls between Appellant and Gilbert, and Appellant and Morris, between 3:54 a.m. and 4:22 a.m. on May 20, 2015. A search of Gilbert's cell phone revealed a photograph of Appellant with the Just Right carbine and a photograph of the shotgun on the bedspread in Room 114. Gilbert was apprehended at 8:00 a.m. that morning.

The recovered firearms were test-fired and found to be in good operating condition. The shotgun was not recovered, but Crutcher testified that he purchased it new, and that it was in good operating condition prior to it being stolen.

On January 27, 2016, a jury convicted Appellant of four counts of person not to possess a firearm.[1] On April 18, 2016, the trial court sentenced Appellant to an aggregate of five to ten years of incarceration.

---

[1] At trial, Appellant stipulated that due to two previous burglary convictions, he was not permitted to possess a firearm.

Appellant timely filed a notice of appeal. However, this Court dismissed the appeal on July 15, 2016, because Appellant's counsel failed to file a docketing statement pursuant to Pa.R.A.P. 3517. On April 20, 2017, the trial court granted Appellant's PCRA petition to reinstate his appellate rights *nunc pro tunc*. Appellant timely filed the instant appeal.[2]

In this Court, counsel has filed both an **Anders** brief and a petition to withdraw as counsel. Accordingly, the following principles guide our review.

> Direct appeal counsel seeking to withdraw under **Anders** must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an **Anders** brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof….
>
> **Anders** counsel must also provide a copy of the **Anders** petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed pro se or raise any additional points worthy of this Court's attention.
>
> If counsel does not fulfill the aforesaid technical requirements of **Anders**, this Court will deny the petition to withdraw and remand the case with appropriate instructions (*e.g.*, directing counsel either to comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

_____

[2] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

*Commonwealth v. Wrecks*, 931 A.2d 717, 720-21 (Pa. Super. 2007) (citations omitted). Further, our Supreme Court has specified the following requirements for an *Anders* brief:

> [I]n the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Santiago*, 978 A.2d 349, 361 (Pa. 2009).

Based upon our examination of counsel's petition to withdraw and *Anders* brief, we conclude that counsel has substantially complied with the technical requirements set forth above.[3] Thus, we now have the responsibility "'to make a full examination of the proceedings and make an independent judgment to decide whether the appeal is in fact wholly frivolous.'" *Commonwealth v. Flowers*, 113 A.3d 1246, 1249 (Pa. Super. 2015) (quoting *Santiago*, 978 A.2d at 354 n.5).

In his *Anders* brief, counsel raises nine issues of arguable merit for this Court's review. *Anders* Brief at 4-5. We have reordered Appellant's issues for ease of disposition, and will address each in turn.

---

[3] Appellant has not filed a response to counsel's petition to withdraw.

The first set of issues pertains to Paige Morris, a co-defendant who testified on behalf of the Commonwealth as part of a plea negotiation. Specifically, counsel raises the following issues: (1) whether the trial court abused its discretion in admitting a photograph of Appellant and Morris; (2) whether the trial court abused its discretion when it refused to allow Appellant to question Morris about whether she had been taking medications for legitimate reasons; and (3) whether the trial court abused its discretion in failing to declare a mistrial *sua sponte* after technical difficulties prevented Appellant from impeaching Morris. **Anders** Brief at 10-13, 19-20, 24-26.

During the testimony of Morris, the Commonwealth sought to introduce a photograph from Appellant's cell phone of Appellant and Morris together to establish that the phone was Appellant's and that Appellant knew Morris. Appellant's counsel objected to its relevancy, and the trial court overruled counsel's objection. N.T., 1/27/2016, at 88-90.

"The admission of photographs is a matter vested within the sound discretion of the trial court whose ruling thereon will not be overturned absent an abuse of that discretion." **Commonwealth v. Solano**, 906 A.2d 1180, 1191–92 (Pa. 2006) (citations omitted). The trial court offered the following explanation for overruling Appellant's objection and admitting the contested photograph.

> (1) [T]he picture had a tendency to make it more probable that the phone belonged to Appellant; (2) determining whether the phone was Appellant's was important because there were pictures

- 7 -

of guns in the hotel room saved on the phone, Appellant was a [p]erson [n]ot to [p]ossess a [f]irearm, and Appellant possessed firearms in the hotel room; (3) it corroborated Paige Morris's testimony; and (4) it showed Appellant and codefendant Morris did in fact know each other and were present together in the hotel room. The picture was therefore relevant and its probative value was not outweighed by a danger of unfair prejudice. [] [I]t was merely a picture of Appellant and adverse witness Paige Morris. Defense counsel[,] although he objected to Commonwealth's Exhibit 28 on the record, provided little to no reason why the picture was not relevant and no explanation of how the picture would prejudice Appellant's defense.

Trial Court Opinion, 6/21/2017, at 3-4 (citations omitted). We agree with the trial court's conclusion that the photograph was relevant to establish that Appellant was in the motel room with Morris, and that the cell phone was in fact Appellant's cell phone. The trial court did not abuse its discretion in admitting it, and thus any claim to the contrary is meritless.

As to the claim regarding Morris's medications, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. On cross-examination, Appellant's counsel sought to impeach Morris with questions about why she was taking cough and cold medicine. The Commonwealth objected because the underlying reason for her intoxication was irrelevant. The trial court sustained the Commonwealth's objection, limiting the questions Appellant's counsel could ask of Morris regarding her intoxication. As succinctly explained by the trial court, "[t]he fact that Morris was impaired is relevant, but why she became impaired does

not matter and is not relevant." Trial Court Opinion, 6/21/2017, at 9. We agree because Appellant was attempting to introduce irrelevant evidence. The trial court properly sustained the Commonwealth's objection.

As to the mistrial claim, "[i]t is within a trial judge's discretion to declare a mistrial *sua sponte* upon the showing of manifest necessity, and absent an abuse of that discretion, we will not disturb his or her decision." **Commonwealth v. Kelly**, 797 A.2d 925, 936 (Pa. Super. 2002). "[A] mistrial should be declared *sua sponte* only in very extraordinary and striking circumstances." **Id.** at 939 (citations and quotation marks omitted).

In his **Anders** brief, counsel alleges that trial counsel attempted to impeach Morris on cross-examination with her prior taped statement to police, but that counsel was unable to do so due to a computer malfunction. However, this claim is not supported by the record. Appellant's counsel acknowledges that trial counsel did not raise an objection at trial to the alleged malfunction, and does not cite to a page in the transcript where the alleged malfunction occurred. **Anders** Brief at 19. We assume, although the record is unclear, that Appellant's counsel attempted to play the taped statement after Morris admitted that she lied to police in the first part of her taped statement. N.T., 1/27/2016, at 161-162. However, the record does not indicate whether the media equipment actually malfunctioned and prevented Appellant from using the prior taped statement, or whether counsel simply did not take the time to set it up.

[Appellant's counsel]: Your Honor, if I could just have a few minutes. I need to find a particular section on here.

THE COURT: Go ahead.

[Appellant's counsel]: Then I have to hook up the computer.

THE COURT: Go ahead.

[Appellant's counsel]: This may take a little bit to warm up.

N.T. 1/27/2016, at 162. After this brief exchange, Appellant's counsel continued to cross-examine Morris without further reference to playing the taped statement. At no time did Appellant's counsel explicitly reference an equipment malfunction. Regardless of the reason it was not played, the failure to play the taped statement did not amount to manifest necessity. Morris admitted on the stand that she had lied during her statement to the police, and was successfully impeached in that regard. Thus, the trial court did not err in not declaring a mistrial.

The next set of issues pertains to Nathan Gilbert, a co-defendant who testified for the Commonwealth as part of a plea negotiation. Specifically, counsel raises two claims that the trial court abused its discretion in prohibiting trial counsel from asking Gilbert questions on cross-examination about (1) the details of his prior burglary conviction, and (2) whether he was subjected to cross-examination at the time he provided a statement to police implicating Appellant. **Anders** Brief at 13-18.

On cross-examination of Gilbert, Appellant's counsel attempted to introduce testimony regarding the underlying facts of Gilbert's prior burglary conviction as *crimen falsi*. The Commonwealth objected twice, and the trial court sustained both objections. N.T., 1/27/2016, at 111-115.

> [W]hen deciding whether a particular offense is *crimen falsi,* one must address both the elemental aspects of that offense *and* the conduct of the defendant which forms the basis of the anticipated impeachment. Accordingly, this Court employs a two-step procedure to determine whether a crime is *crimen falsi.* First, we examine the essential elements of the offense to determine if the crime is inherently *crimen falsi*—whether dishonesty or false statement [is] a necessary prerequisite to commission of the crime. Second, if the crime is not inherently *crimen falsi,* this Court then inspects the underlying facts that led to the conviction to determine if dishonesty or false statement facilitated the commission of the crime.

*Commonwealth v. Davis*, 17 A.3d 390, 395–96 (Pa. Super. 2011) (citations and quotation marks omitted) (emphasis in original).

Because the trial court found the burglary conviction to be *crimen falsi* based solely on the statutory definition of the offense, the trial court was not required to conduct an analysis of the underlying facts. *Commonwealth v. Cascardo*, 981 A.2d 245, 255 (Pa. Super. 2009) (holding that the trial court need not "engage in an analysis of the facts underlying Cascardo's federal conviction for tampering with witnesses because the offense, by definition, involves dishonesty"). Moreover, while a court may sometimes be required to analyze the underlying facts of a conviction to determine whether it is *crimen falsi*, **see Davis, supra**, we are unaware of any authority that would

- 11 -

grant Appellant the right *to question a witness* regarding the underlying facts of a *crimen falsi* conviction. The fact that the witness was convicted of a crime of falsehood is what is relevant, and here, that evidence was presented at trial. The underlying facts of the conviction are not relevant. Thus, counsel's proposed issue in this regard is without merit.

Secondly, on cross-examination, Appellant's counsel asked Gilbert if he was subject to cross-examination when he initially provided a statement to police.[4] The Commonwealth objected based on relevance. Appellant's counsel responded that it was relevant "if [Gilbert's] going to suggest that his statement is somehow true just because he gave it but he wasn't subject to the truth determining process of cross." N.T., 1/27/2016, at 121-22. The trial court sustained the Commonwealth's objection, stating that "[Gilbert's] being cross[-]examined now." *Id.* at 122.

"Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion." *Commonwealth v. Cain*, 29 A.3d 3, 6 (Pa. Super. 2011) (quoting *Commonwealth v. Montalvo*, 986 A.2d 84, 94 (Pa. 2009)). More than just a mere error in judgment, an abuse of discretion occurs when

---

[4] We note that counsel's question was misleading to the jury. Cross-examination is a tool used in adversarial settings to protect a defendant's right to confront the witnesses against him; it is not a procedure that is ever available or applicable when an individual is interviewed by the police. *See Commonwealth v. Yohe*, 39 A.3d 381, 384-85 (Pa. Super. 2012).

the judge overrides or misapplies the law, exercises manifestly unreasonable judgment, or demonstrates partiality, prejudice, bias, or ill-will. ***Id.***

In its 1925(a) opinion, the trial court explained that "Gilbert was subject to cross examination at trial, so it is completely irrelevant whether he was cross examined when he originally made the prior statement. Gilbert was subject to the truth determining process, and it was the exclusive province of the jury to determine his credibility." Trial Court Opinion, 6/21/2017, at 6. We agree that the question was irrelevant and misleading as Gilbert could not have been subjected to cross-examination at the time of his police interview. The trial court did not abuse its discretion in sustaining the Commonwealth's objection. Counsel's issue in this regard is meritless.

The next set of issues for review concerns the admission of text messages. Specifically, these issues are whether the trial court abused its discretion by (1) improperly permitting Detective Stephen Higgs to testify about the operation of text messages when he was not qualified as an expert, and (2) admitting the text message exhibits without an expert witness first laying a proper foundation. ***Anders*** Brief at 20-24.

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701. Whereas,

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

The specific testimony at issue concerned a screenshot of text messages, and an explanation of which messages were incoming and which messages were outgoing. The trial court concluded that Detective Higgs did not provide expert testimony. Trial Court Opinion, 6/21/2017, at 8. We agree. Detective Higgs did not testify to any technical or scientific aspects of the phone, but rather what he plainly observed in the screenshot. Further, his testimony was helpful in determining whether the phone belonged to Appellant, and it did not require any specialized knowledge. Thus, the trial court did not err in permitting Detective Higgs to testify as he did.

As to the admission of the challenged text messages, Commonwealth Exhibits 34-40, we find that any pursuit of this claim would be frivolous. At

trial, Appellant's counsel objected to Detective Higgs reading the messages aloud; counsel did not object to the admission of the exhibits themselves, or to their publication. N.T., 1/27/2016, at 188-94. Consequently, Appellant has failed to preserve this issue for appellate review. *See Commonwealth v. Montalvo*, 641 A.2d 1176, 1184 (Pa. Super. 1994) ("In order to preserve an issue for review, a party must make a timely and specific objection at trial."); *Commonwealth v. Kalichak*, 943 A.2d 285, 291 (Pa. Super. 2008) (holding that when an issue has been waived, "pursuing th[e] matter on direct appeal is frivolous").

The final set of issues identified by counsel pertains to the (1) sufficiency of the evidence and (2) the weight of the evidence. *Anders* Brief at 26-29.

As to sufficiency:

> [O]ur standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> … Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Tukhi,* 149 A.3d 881, 886–87 (Pa. Super. 2016) (internal citations omitted). Credibility of witnesses and the weight of the evidence produced is within the province of the trier of fact, who is free to believe all, part or none of the evidence. *Commonwealth v. Scott,* 146 A.3d 775, 777 (Pa. Super. 2016).

Appellant was convicted of four violations of section 6105, which provides that "[a] person who has been convicted of an offense enumerated in subsection (b) [] shall not possess [] a firearm in this Commonwealth." 18 Pa.C.S. § 6105(a)(1). At Appellant's trial, the parties stipulated that Appellant was previously convicted of an enumerated offense (burglary) which rendered him a person not to possess a firearm. N.T. 1/27/2016, at 204. Thus, the only question as to sufficiency is whether the Commonwealth proved beyond a reasonable doubt that Appellant possessed each of the four firearms. The trial court aptly addressed Appellant's sufficiency claim as follows.

> At the trial on January 27, 2016, the [] Commonwealth's evidence included a video of Appellant at the laundromat, photographs of Appellant's motel room where the guns were found, the motel room registration form showing the room registered to Appellant, photographs of the firearms, selfie photographs of Appellant in the [m]otel room holding one of the firearms, photographs from Appellant's cell phone, screenshots of text messages from Appellant's phone discussing the guns, phone records of Appellant's phone, and testimony from numerous witnesses.
>
> All of the testimony and evidence presented at trial establish[ed] that Appellant knew and communicated with Nathan Gilbert, Paige Morris, and Autumn Doyle at some point prior to Appellant's encounter with Sergeant Weikert. Appellant and co-

- 16 -

defendant Nathan Gilbert took Autumn Doyle's Geo Prizm on May 20, 2015. Appellant took a firearm with him in the vehicle, placing it underneath the driver's seat. Gilbert and Appellant agreed to meet at the laundromat, which was the same laundromat where the empty vehicle with the firearm inside of it was parked. Room 114 at the Three Crowns Motor Lodge was registered to Appellant from May 17, 205 to May 20, 2015. Appellant had access to and was inside of room 114 at the Three Crowns Motor Lodge. Appellant stole four firearms from Kanyon Crutcher's apartment and sold one of them. Multiple witnesses testified that Appellant showed them firearms in room 114[,] some of which he kept under the bed. Appellant held a firearm for a picture and took a picture of the other firearms in room 114. Appellant was with Paige Morris in room 114 and touched, held, possessed, wiped fingerprints off of, and attempted to sell the firearms. Appellant left his wallet with Morris, and she put it in her purse in room 114. Police located two firearms, an axe, the receipt for one of the stolen firearms, and ammunition in room 114 of the Three Crowns Motor Lodge. A third firearm was found in the Geo Prizm near the accelerator pedal. Police also uncovered multiple text messages and photographs from Appellant's phone and photographs from Nathan Gilbert's phone proving Appellant's possession of firearms.

Trial Court Opinion, 6/21/2017, at 12-13. Based on the foregoing, the evidence presented at trial was sufficient to support his convictions.

As to Appellant's weight-of-the-evidence claim, it is well-settled that "a weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." **Commonwealth v. Priest**, 18 A.3d 1235, 1239 (Pa. Super. 2011) (citing Pa.R.Crim.P. 607). "Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." **Commonwealth v. Sherwood**, 982 A.2d 483, 494 (Pa. 2009). Instantly, Appellant did not

present a weight-of-the-evidence claim to the trial court. Therefore, Appellant has waived this issue and it is frivolous. ***See Kalichak, supra***.

Thus, we agree with counsel that Appellant's issues are frivolous.

Moreover, we have conducted "a full examination of the proceedings" and conclude that "the appeal is in fact wholly frivolous." ***Flowers***, 113 A.3d at 1248. Accordingly, we affirm the judgment of sentence and grant counsel's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2018